■ In the Matter of the Claim of SAMUEL LEVINSON, Appellant. PHILIP Ross, as Industrial Commissioner, Respondent. — Appeal from a decision of the Unemployment Insurance Appeal Board, filed December 5, 1979. The board, on its own motion, reopened and rescinded its prior decision of August 30, 1979 wherein it had held that claimant was disqualified from benefits because he had abandoned his employment by a failure to report for work on March 20, 1978. It has now sustained initial determinations that claimant is disqualified from benefits because inadequate job efforts made him unavailable for employment from March 6, 1978 to March 20, 1978 and that he left his employment without good cause by failing to report for work on March 20, 1978. The further ruling that the benefits paid are recoverable has also been sustained because of false statements made for the purpose of obtaining benefits, and a forfeit penalty of 95 effective days was imposed. The board's finding that claimant voluntarily left his employment on March 20, 1978 by not reporting to work is supported by substantial evidence. The finding in this case that the claimant's job efforts were so minimal as to support an inference of unavailability as of March 6, 1978 is also supported by substantial evidence. However, the findings of a willful misrepresentation to obtain benefits have no record support. When the claimant applied for benefits on or about March 7, 1978, he placed markings in both the "yes" and "no" boxes as to having applied for a pension. He distinctly marked "yes" as to Social Security benefits. He testified that he had applied for a union pension in November of 1977 but he had not yet received it and since it would not limit his earnings he did not consider it applicable. In view of the fact that he clearly indicated he was receiving a Social Security retirement benefit and that his age was 73, it is difficult to find any fulcrum whereby a misleading answer as to a pension would have a bearing on the obtaining of benefits in this case. There is a lack of substantial evidence of willfulness as to the pension answer and there is no showing of *any* substantial connection between the answer and the obtaining of benefits. In any event, the markings on the pension question were such as to put the local office on notice of doubt in the claimant's mind and there is no showing that he made any false responses to questions. Claimant further marked "no" on the original claim for benefits as to whether or not he had applied for workers' compensation. As worded, the question would literally mean at any time throughout his life. Upon this appeal, no one contends that such a comprehensive answer would have any bearing upon eligibility for benefits. The evidence establishes that on March 17, 1977, claimant injured his left

shoulder and arm. He went to a doctor and that doctor sent reports of his treatments of claimant to the Workers' Compensation Board. Upon the basis of that reporting and required reports by the employer and its workers' compensation carrier, the Workers' Compensation Board assigned a case number to the matter. This record contains the record of the Workers' Compensation Board in regard to the March 17, 1977 incident. It contains no application or claim filed by claimant and he testified that the first time he was aware he could get some benefits was when the employer's representative told him so on March 6, 1978. Claimant sent a letter dated March 9, 1978 to the Workers' Compensation Board indicating that on March 6 the employer had told him he (claimant) had received some money and since he had not, he wanted to be advised. That letter contains the Workers' Compensation Board's case number for this incident. However, the letter does not refer to any application for benefits made by him and the only evidence in this record is that he had not made any application for benefits or authorized anyone to do so before such letter of March 9. This issue poses no question of credibility and the board's finding that marking "no" as to the question of workers' compensation benefits was a willful false answer or in any way affected his eligibility for benefits is not supported by substantial evidence. It should be noted that in response to a question by the local office dated May 24, 1978, claimant unequivocally stated "yes" as to whether or not he was receiving or had applied for workers' compensation benefits or a pension. Finally, claimant did receive a schedule award on August 23, 1978 for partial loss of use of his arm. The schedule was computed at $65 per week and was computed to cover through the date of September 14, 1978. Since it was a schedule award, there is no double drawing of benefits. In summary, the findings of willful misrepresentation to obtain benefits and that the benefits received were recoverable are not supported by substantial evidence upon the record as a whole. Decision modified, by reversing so much thereof as found the overpayment of benefits recoverable and imposed a forfeit penalty, and, as so modified, affirmed, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent herewith. Sweeney, J.P., Kane, Main, Mikoll and Herlihy, JJ., concur.